IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DARIAN FISHER, et al.,                    §
                                          §
                        Plaintiffs,       §
                                          §   Civil Action No. 3:12-CV-3604-D
VS.                                       §
                                          §
DALLAS COUNTY, et al.,                    §
                                          §
                        Defendants.       §

MEMORANDUM OPINION
AND ORDER

        In this action alleging claims for race discrimination and retaliation under Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981

and 1983, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code

Ann. §§ 21.001-21.556 (West 2006), and for intentional infliction of emotional distress

("IIED") under Texas law, five of the defendants who are sued in their individual capacities

(the "Individual Defendants") move to require plaintiffs to file a Fed. R. Civ. P. 7(a) reply,

and the remaining defendant sued in his individual capacity moves pursuant to Rule 12(c)

for judgment on the pleadings.  The Individual Defendants, with the agreement of the sixth

individually-named defendant, also move the court to stay the deadline for filing motions for

summary judgment.  For the reasons that follow, the court grants the motion to require

plaintiffs to file a Rule 7(a) reply, grants in part and denies in part the Rule 12(c) motion for

judgment on the pleadings, and grants the motion to stay the deadline for filing motions for

summary judgment.

I

Plaintiffs Darian Fisher ("Fisher") and LaParker Smith ("Smith") sue Dallas County (the "County"), the Dallas County Commissioners Court ("Commissioners Court"),[1] the Individual Defendants (Shannon Brown, Dale Lilley ("Lilley"), Terry Glynn Jones ("Jones"), Darrell Howerton, and Mattye Mauldin-Taylor, Ph.D.), and a sixth individual defendant, David Womble ("Womble").[2] Fisher and Smith allege that, during their employment with the County, they were subjected to race discrimination in the form of a hostile work environment, disparate application of County disciplinary policies and procedures, disparate terms and conditions of employment, and retaliation. They also allege that Womble and the Individual Defendants subjected them to intentional infliction of emotional distress. The Individual Defendants move to require plaintiffs to file a Rule 7(a) reply. Womble moves for judgment on the pleadings under Rule 12(c), asserting that he cannot be held liable under Title VII or the TCHRA, that plaintiffs have failed to state a claim of retaliation or discrimination against him under § 1981 or § 1983, and that plaintiffs' IIED claim is preempted by the TCHRA. The Individual Defendants and Womble move the court to stay the deadline for filing motions for summary judgment. Plaintiffs oppose the motions.

---

[1]The court does not suggest by referring to the Commissioners Court as a defendant that it is a jural entity that is separate from the County itself.

[2]The court refers to Womble separately because he is represented by separate counsel.

II

The court turns first to the Individual Defendants' motion to require plaintiffs to file a Rule 7(a) reply.

A

On December 23, 2013 the Individual Defendants filed a motion to require plaintiffs to file a Rule 7(a) reply, arguing that the federal claims brought against them under 42 U.S.C. § 1981[3] are subject to the defense of qualified immunity, and that, under the authority granted in *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc), the court should require plaintiffs to state with specific detail the factual allegations against each of the Individual Defendants sufficient to establish plaintiffs' claims under 42 U.S.C. § 1981.

Plaintiffs respond that the November 9, 2012 scheduling order in this case ("Scheduling Order") required that any motion not otherwise covered by the Scheduling Order be filed no later than December 1, 2013, and that the Individual Defendants' motion, filed December 23, 2013, was filed after the Scheduling Order deadline and should therefore be summarily dismissed.[4]

---

[3]The court assumes that the Individual Defendants intended to require heightened pleading of the claims brought against them under 42 U.S.C. § 1983 (as opposed to § 1981) because § 1983 is the statute that permits suits for violations of the Constitution or federal law by person acting under color of state law.

[4]The court rejects plaintiffs' assertion that the court should deny the requested relief based on the timing of the motion. Because *Schultea* grants the court the power to order a Rule 7(a) reply on its own, it is immaterial that the Individual Defendants filed their motion after the Scheduling Order deadline for filing motions not otherwise covered. *See Schultea*, 47 F.3d at 1433; *see also Jones v. Dallas Cnty.*, 2013 WL 6388441, at *3 (N.D. Tex. Dec.

- 3 -

B

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity likewise applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the

_____

6, 2013) (Fitzwater, C.J.) (ordering plaintiffs to file Rule 7(a) reply under the authority granted in *Schultea*).

- 4 -

officer's conduct violated a constitutional right?  This must be the initial inquiry.")).[5]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.*  "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."  *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken."  *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right."  *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

"[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff."  *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996)

---

[5]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory.  *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).  Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation.  *Id.* at 236.  The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases."  *Id.* at 242.

(citing *Schultea*, 47 F.3d at 1433).  Although a plaintiff may comply with ordinary pleading standards in his initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a).  *Schultea*, 47 F.3d at 1433.  "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations."  *Id*. "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury."  *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).  The case should not be allowed to proceed unless plaintiffs can assert specific facts that, if true, would overcome the defense.  *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]").  The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist." *Schultea*, 47 F.3d at 1434; *see also Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").

C

At the outset, the court notes that many of the allegations in plaintiffs' amended complaint are directed only at the County or Womble, neither of whom has moved for a Rule

- 6 -

7(a) reply.  Nonetheless, the court concludes in its discretion that requiring plaintiffs to file a Rule 7(a) reply will materially assist the court in determining whether any of the Individual Defendants is entitled to qualified immunity from plaintiffs' §§ 1981 and 1983 claims, to the extent plaintiffs intend to allege these claims against the Individual Defendants.[6]  The amended complaint makes some allegations against specific Individual Defendants, but in setting out their "discrimination on the basis of race" claim, plaintiffs either group all of the defendants together under the term "Defendants," thereby precluding the court from determining which, if any, of the Individual Defendants allegedly committed a constitutional violation, *see, e.g.,* Am. Compl. ¶ 51 ("Plaintiffs have suffered severe and persistent degradation as a result of Defendants' racially hostile work environment[.]"); *id.* ("Had Defendants not wrongfully terminated Plaintiffs, the information would have only been disclosed on their hiring papers in their personnel files."), or they use the passive voice, making it impossible to tell which, if any, of the Individual Defendants is responsible for the alleged constitutional violation, *see, e.g., id.* ¶ 48 ("Fisher was pre-textually terminated for a prior felony conviction and later reinstated[.]"); *id.* ¶ 49 ("Smith was pre-textually terminated for a prior felony conviction and later reinstated[.]").

Plaintiffs' failure to attribute conduct to any of the Individual Defendants or to separate out the allegations against the various Individual Defendants makes it impossible

---

[6]It is unclear whether they do.  For example, in the "Jurisdiction and Venue" section of the amended complaint, plaintiffs allege their discrimination and retaliation claims only against the County, and assert only their IIED claim against the Individual Defendants. *See* Am. Compl. ¶¶ 15-19.

to determine whether the defendant in question acted in an objectively unreasonable manner in light of clearly established constitutional standards. *See Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (requiring plaintiff, in order to rebut qualified immunity defense, to show "that he has alleged a violation of a clearly established constitutional right" and that "the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident").

Accordingly, under the authority granted in *Schultea*, 47 F.3d at 1433, the court orders that, within 28 days of the date this memorandum opinion and order is filed, plaintiffs file a Rule 7(a) reply that alleges with particularity all material facts that plaintiffs contend establish their right to recover under §§ 1981 and 1983 against each Individual Defendant for the violation of a constitutional right. *See Reyes*, 168 F.3d at 161. After plaintiffs file their Rule 7(a) reply, the Individual Defendants may move for a judgment on the pleadings or for other relief available by motion, if they have grounds to do so.

## III

The court now considers Womble's motion for a judgment on the pleadings.

### A

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See, e.g., Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Womble's motion, plaintiffs' amended complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

B

Womble moves for dismissal of plaintiffs' claims against him in his individual capacity under Title VII and TCHRA, arguing that because he was not plaintiffs' employer, he cannot be held liable under either statute.  Plaintiffs do not respond to this argument.

The court holds that plaintiffs cannot recover under Title VII or the TCHRA against Womble individually.  It is undisputed that Womble was not plaintiffs' employer. Only "employers," however, "not individuals acting in their individual capacity who do not otherwise meet the definition of 'employers,' can be liable under [T]itle VII." *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *see also Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F.Supp.2d 787, 796 (E.D. Tex. 2013) ("It is well settled in the Fifth Circuit that individual employees, even those functioning in a supervisory capacity, cannot be held personally liable under Title VII, because they are not 'employers,' as that term is defined in Title VII." (citing cases)).  Similarly, "Texas state and federal courts have uniformly held that supervisory personnel are not liable in their individual capacity under the TCHRA." *Marabella v. Autonation U.S.A. Corp.*, 88 F.Supp.2d 750, 752 (S.D. Tex. 2000); *see also Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 439 (Tex. App. 2000, pet. denied) ("[S]upervisors and managers are not liable in their individual capacities for alleged acts of discrimination under the TCHRA."); *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App. 1992, no writ) ("The [TCHRA] does not create a cause of action against supervisors or individual employees.").

Accordingly, the court grants Womble's motion and dismisses plaintiffs' Title VII and

TCHRA claims against Womble to the extent plaintiffs assert these claims against him in his individual capacity.

C

Womble next seeks to dismiss plaintiffs' retaliation and discrimination/hostile work environment claims brought under §§ 1981 and 1983.  He argues that plaintiffs do not allege that they suffered an adverse employment action, and, even if they did, they do not assert that Womble was personally involved in any alleged adverse employment action.

1

The court begins with plaintiffs' discrimination claim.  In support of this claim, plaintiffs allege that they are entitled to recover under §§ 1981 and 1983 because, *inter alia*, they were pretextually terminated for a prior felony conviction, despite having reported the conviction on their employment applications, and only African-American employees who had reported prior convictions were terminated on this basis.  Assuming *arguendo* that plaintiffs were required to, and did, plead that they suffered an adverse employment action, the court nonetheless grants Womble's motion because plaintiffs have failed to allege that Womble discriminated against them on the basis of race, as required to recover under §§ 1981 and 1983.

"Section 1981 does not provide an independent cause of action.  In order to remedy violations of § 1981, a plaintiff must assert a cause of action under § 1983."  *Jackson v. Watkins*, 2009 WL 1437824, at *1 n.5 (N.D. Tex. May 21, 2009) (Fitzwater, C.J.) (alteration omitted) (quoting *Meyers v. La Porte Indep. Sch. Dist.*, 277 Fed. Appx. 333, 335 (5th Cir.

2007) (per curiam)), *aff'd on other grounds*, 619 F.3d 463 (5th Cir. 2010).[7]  To state a claim in an individual capacity suit brought under § 1983, a claimant must allege a violation of the Constitution or federal law by a person acting under color of state law.  42 U.S.C. § 1983. Although "[t]he generic pleading requirements of [Rule 8] govern suits against individual defendants in their official capacity," "[p]laintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation."  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).  "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation."  *Id.* (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)).  Additionally, in the context of § 1983 claims against supervisors, "[f]or there to be liability under section 1983, a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights, or there must be a causal connection between the actions of that person and the constitutional right sought to be redressed."  *King v. Louisiana*, 294 Fed. Appx. 77, 83 (5th Cir. 2008) (per curiam) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th

---

[7]The Fifth Circuit has explained that

> [t]he express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.  This requirement is not a mere pleading formality.

*Meyers*, 277 Fed. Appx. at 335 (citations, brackets, and internal quotation marks omitted).

- 12 -

Cir. 1983)) (affirming dismissal of claims against individual defendants, based on qualified immunity, where the allegations against these defendants failed to set forth any constitutional violation); *see also Anderson*, 184 F.3d at 443 ("In order to state a cause of action under § 1983, [plaintiff] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.").

In support of their race discrimination claim, plaintiffs allege that they were "pre-textually terminated for a prior felony conviction and later reinstated . . . [and o]nly African American employees who had reported prior convictions were pre-textually terminated on this basis." Am. Compl. ¶¶ 48, 49. They also allege that defendant Jones used a "racial slur" in the presence of Smith. *Id.* ¶ 50. Plaintiffs have failed to plead *that Womble* was personally involved in any of the conduct that allegedly deprived them of their constitutional rights. *See King*, 294 Fed. Appx. at 83. Accordingly, the court grants Womble's motion to dismiss plaintiffs' § 1983 discrimination claims against him in his individual capacity, to the extent these claims are based on discrimination on the basis of race.[8]

Plaintiffs have similarly failed to plausibly allege, in support of their hostile work

---

[8]In their response, plaintiffs appear to argue that Womble should be held liable in his official capacity ("should he be reinstated" to employment with the County) for "hostility violations" and should be enjoined from "exposing black workers to racially hostile words and images" during the performance of his official duties. Ps. Br. 10. Because no motion for judgment on the pleadings has been filed with regard to official-capacity claims asserted against Womble, the court does not consider whether any official-capacity claim should be dismissed.

environment claims brought against Womble in his individual capacity, that Womble subjected them to a hostile work environment, in violation of their federal or constitutional rights.[9]  Although plaintiffs include factual allegations involving Womble in the hostile work environment claims they appear to assert against the County,[10] the only hostile work environment claim asserted against "Defendants" (presumably including Womble in his individual capacity), consists of the following allegation:

> Plaintiffs have suffered severe and persistent degradation as a result of Defendants' racially hostile work environment, in part because revealing the discrimination resulted in their personal background being described in the *Dallas Morning News* in June 2012.  The need to redress the harm committed by Defendants' racially-motivated terminations has resulted in an unqualified "Felon" label[] being commonly known and applied to them in

---

[9]"A prima facie case of racial harassment alleging hostile work environment normally consists of five elements: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term[,] condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."  *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citations omitted).

[10]*See, e.g.,* Am. Compl. ¶ 44 ("Defendant Dallas County, through its agents, including but not limited to named Defendants in this action, subjected plaintiffs to a hostile work environment on the basis of race.  Defendant subjected Plaintiffs to racial slurs in the form of racist words and images downloaded from the internet on Dallas County computers, including an animation on Defendant David Womble's telephone[.]"); *id.* at ¶ 45 ("Defendant Dallas County, through its agents, including but not limited to named defendants in this action, subjected plaintiffs to a hostile work environment on the basis of race.  Minority employees were subjected to systematic intimidation, such as Defendant David Womble announcing in the presence of Defendant Dale Lilley at a Monday Meeting that any employee who did not do their job would be beaten in the Boiler Room.  The threat of beating was a race-based threat because the meeting was for shift workers, and most shift workers are minorities.").

- 14 -

the community and work environment.  Had Defendants not wrongfully terminated Plaintiffs, the information would have only been disclosed on their hiring papers in their personnel files.

Am. Compl. ¶ 51.  Plaintiffs have failed to plead that Womble was personally involved in their "pretextual termination," and their conclusory allegation of a "racially hostile work environment," *id.*, is insufficient to plausibly plead the elements of a hostile work environment claim against Womble.  The court thus dismisses plaintiffs' hostile work environment claim asserted against Womble in his individual capacity.

2

Womble moves to dismiss plaintiffs' retaliation claims asserted against him in his individual capacity, arguing that plaintiffs have failed to allege that they suffered an adverse employment action.  He argues that plaintiffs "have not complained they were discharged, demoted, denied hire, denied promotion, or reprimanded in retaliation for making protected complaints about discrimination; and undesirable work assignments are not adverse employment actions."  D. Br. 5.

A prima facie case of retaliation under § 1981 requires a showing that (1) the employee engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action.  *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).  In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 58 (2006), the Supreme Court broadened the meaning of "adverse employment action" in the context of

Title VII retaliation claims to include any action that is "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citations and internal quotation marks omitted). Neither the Fifth Circuit nor the Supreme Court has addressed whether the broadened definition of "adverse employment action" applies in the context of retaliation claims brought under §§ 1981 and 1983. *See Petrie v. City of Grapevine*, 904 F.Supp.2d 569, 584 n.7 (N.D. Tex. 2012) (Lynn, J.).

> Because such claims are generally analyzed under the same framework as are Title VII claims, and because § 1981 does not contain the language that prompted the Fifth Circuit to give the Title VII anti-retaliation clause a narrower reading in the first place, the court will apply *Burlington's* more expansive standard. The court will deem to be an adverse employment action for purposes of § 1981-based retaliation any action that a reasonable employee would have found to be materially adverse, that is, one that might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

*King v. Enter. Leasing Co. of DFW*, 2007 WL 2005541, at *13 (N.D. Tex. July 11, 2007) (Fitzwater, J.) (quoting *Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *17 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009)).

In support of their retaliation claim, plaintiffs allege that (1) after Smith filed a grievance with the County, Womble telephoned Smith's home and threatened him to "stay away" from pursuing discrimination claims against the County; (2) in retaliation for Smith's filing a grievance and contacting the Equal Employment Opportunity Commission ("EEOC") regarding his "pre-textual termination," Womble removed Smith from his position as an

- 16 -

inspector, without consulting his direct supervisor, and transferred him to be under the direct supervision of Womble and defendant Lilley; (3) after nonparty Dennis L. Jones ("Dennis") filed an EEOC complaint and civil rights action against Womble and others, Womble threatened Fisher not to speak with Dennis; and (4) in retaliation for filing his previous EEOC complaint, Womble transferred Fisher to another building.

The court holds that, at the very least, by alleging that they were each transferred to a different position in retaliation for engaging in protected conduct, plaintiffs have plausibly pleaded an action that a reasonable employee would have found to be materially adverse. *Burlington N.*, 548 U.S. at 68.  The Fifth Circuit has held that, for purposes of a § 1983 claim, a transfer that serves as a demotion qualifies as an adverse employment action. *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).  "To be equivalent to a demotion, a transfer need not result in a decrease in pay, title or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id.* (citing *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996)); *accord Alvarado v. Tex. Rangers*, 492 F.3d 605, 612-13 (5th Cir. 2007). Whether a transfer is objectively worse is a question of fact. *See, e.g., Sharp*, 164 F.3d at 933.  Plaintiffs have plausibly alleged that they were subjected to an adverse employment action when Smith was transferred to a new position under the direct supervision of Lilley and Womble, and Fisher was transferred to another building.  Because Womble does not move to dismiss plaintiffs' retaliation claim on any basis other than the failure to allege an adverse employment action, the court denies the motion to dismiss this claim.

D

Finally, Womble moves for a dismissal of plaintiffs' state-law IIED claim, arguing that this claim is preempted by the TCHRA. Under Texas law, "a plaintiff may not bring an IIED claim when other statutory remedies are available for the underlying conduct." *Pacheco v. Zanios Foods, Inc.*, 502 F.Supp.2d 508, 512 (W.D. Tex. 2006) (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). IIED "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (quoting *Zeltwanger*, 144 S.W.3d at 447). "Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Id*. "Therefore, courts have found that employees' IIED claims against supervisors are precluded when there other statutory remedies available against the employer." *Mercer v. Arbor E & T*, 2012 WL 1425133, at *10 (S.D. Tex. Apr. 21, 2012) (citing cases); *see also Muniz v. El Paso Marriott*, 2009 WL 4878619, at *3 (W.D. Tex. Dec. 8, 2009) ("Under Texas law, a claim for IIED is not available against an employee's supervisor if the same alleged conduct supports a claim for relief against the employer under other legal theories, such as the anti-discrimination statutes."); *Rawlings v. Travelers Prop. Cas. Ins. Co.*, 2008 WL 2115606, at *4 (N.D. Tex. May 20, 2008) (O'Connor, J.) ("[A] plaintiff cannot bring a claim for [IIED] against a *defendant supervisor* where the plaintiff could bring a state statutory claim or other tort claim against *plaintif*[f]'*s employer* based on the same conduct alleged. Accordingly, for Plaintiff to have stated a claim on which she has a reasonable basis of recovery against . . . her former supervisor, Plaintiff's IIED claim

- 18 -

cannot be based on facts that could form the basis of any workplace harassment or discrimination claim at all, even an action solely against her employer." (emphasis in original) (citations omitted)).

Plaintiffs have "not attempted to distinguish the conduct which supports the IIED claim from the conduct which supports the statutory workplace claims." *Muniz*, 2009 WL 4878619, at *3. They allege that Womble "subjected [them] to intentional infliction of emotional distress by directing and allowing to be directed toward Plaintiffs racist, discriminatory, homophobic, and physically threatening remarks and race-based hostile remarks and actions." Am. Compl. ¶ 17. They also assert that Womble "did intentionally and recklessly inflict emotional distress on plaintiffs through [his] outrageous words and actions . . . exceeding all bounds of decency." *Id.* ¶ 56. To the extent they incorporate into their IIED claim the other allegations in the complaint, they have also alleged that Womble subjected them to racial slurs, including an animation on Womble's telephone; announced that any employee who did not do his job would be beaten in the boiler room; and retaliated against them by making threatening remarks and transferring them to different positions after they made complaints to the County and the EEOC.[11] By these allegations, plaintiffs are "attempting impermissibly to predicate [their] IIED claim on the same conduct which underpins" their discrimination and retaliation claims. *Muniz*, 2009 WL 4878619, at *3. In

---

[11]Because the other allegations in support of plaintiffs' IIED claim are directed at defendants other than Womble, the court does not consider these allegations in dismissing plaintiffs' IIED claim against Womble.

other words, the "gravamen" of plaintiffs' IIED claim is discrimination and retaliation, and they invoke the same facts to allege discrimination and retaliation that they rely on to allege IIED. *See Swafford v. Bank of Am. Corp.*, 401 F.Supp.2d 761, 764 (S.D. Tex. 2005); *see also Phillips v. United Parcel Serv.*, 2011 WL 2680725, at *14 (N.D. Tex. June 21, 2011) (Ramirez, J.) ("Since Plaintiff relies on the same alleged conduct as part of her discrimination, harassment, and retaliation claims, her claim of [IIED] is preempted."), *rec. adopted*, 2011 WL 2678949 (N.D. Tex. July 8, 2011) (Fish, J.), *aff'd*, 485 Fed. Appx. 676 (5th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 1588 (2013).

Accordingly, plaintiffs' IIED claim against Womble is dismissed.

IV

The court now considers the Individual Defendants' motion to stay the summary judgment motion deadline.

A

Plaintiffs filed their complaint on September 5, 2012 and amended complaint on September 13, 2012. On November 9, 2012 the court entered the Scheduling Order, which required that motions for summary judgment be filed no later than December 1, 2013. On November 24, 2013 the parties jointly moved to extend the deadline to file motions for summary judgment from December 1, 2013 until January 10, 2014. The court granted the motion. The Individual Defendants now move to defer the deadline for filing motions for summary judgment "until such a time as the Court has determined that the pleadings are factually specific enough to overcome each of the individual Defendants' right to qualified

immunity." Ds. 1/2/14 Br. 2.  On January 6, 2014 the court issued an order staying the deadline for filing motions for summary judgment pending a ruling on the Individual Defendants' motion.

Plaintiffs oppose the motion, arguing that at the time the Individual Defendants filed the motion to stay, no motion for judgment on the pleadings was pending and the Individual Defendants' motion for a Rule 7(a) reply was not timely filed.  They maintain that, under the Scheduling Order, the instant motion should have been filed by the deadline for filing motions not otherwise covered by the Scheduling Order.  They also posit that Defendants are motivated by bad faith gamesmanship in seeking permission to extend the summary judgment deadlines, and that because defendants have provided the court with no information to enable it to determine whether the tardiness of filing was due to mistake, inadvertence, or carelessness, the Individual Defendants' motion must be denied.

The Individual Defendants argue in reply, *inter alia*, that because their motion to stay was filed before the January 10, 2014 deadline for filing summary judgment motions, the motion was not late.

## B

In this memorandum opinion and order, the court is requiring that plaintiffs file a Rule 7(a) reply that alleges with particularity all material facts that plaintiffs contend establish their right to recover under §§ 1981 and 1983 against each Individual Defendant for the violation of a constitutional right.  Because a Rule 7(a) reply, which is treated by the court as a pleading, should precede discovery and any subsequent motions for summary judgment,

- 21 -

the court grants the motion to stay the summary judgment deadline. *See, e.g., Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]"). Motions for summary judgment will not be due until after plaintiffs file their Rule 7(a) reply and the court issues a ruling on any motions that the Individual Defendants timely file thereafter.  At that point, the court will revisit the Scheduling Order and set new deadlines, as appropriate.

\* \* \*

For the foregoing reasons, the court grants the motion to require plaintiffs to file a Rule 7(a) reply and orders plaintiffs to file a Rule 7(a) reply within 28 days of the date this memorandum opinion and order is filed, grants in part and denies in part Womble's motion for judgment on the pleadings, and grants the Individual Defendants' motion to stay deadline for filing motions for summary judgment.

**SO ORDERED**.

April 18, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE