IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DARIAN FISHER, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:12-CV-3604-D |
| VS. | § | |
| | § | |
| DALLAS COUNTY, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging claims for race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., 42 U.S.C. §§ 1981 and 1983, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. §§ 21.001-21.556 (West 2006), and for intentional infliction of emotional distress ("IIED") under Texas common law, five of the defendants who are sued in their individual capacities (the "Individual Defendants") move under Fed. R. Civ. P. 12(c) for judgment on the pleadings, and the remaining defendant sued in his individual capacity, David Womble ("Womble"), moves for a second time under Rule 12(c) for judgment on the pleadings.  For the reasons that follow, the court, relying in part on grounds that it raises *sua sponte*, grants the Individual Defendants' motion, grants in part Womble's motion, and grants plaintiffs leave to replead.

I

Because this case is the subject of a prior opinion that was selected for publication,[1] the court will recount only the background facts and procedural history necessary to understand the present decision.  Plaintiffs Darian Fisher ("Fisher") and LaParker Smith ("Smith") sue Dallas County, the Dallas County Commissioners Court ("Commissioners Court"),[2] the Individual Defendants (Shannon Brown ("Brown"), Dale Lilley ("Lilley"), Terry Glynn Jones ("Jones"), Darrell Howerton ("Howerton"), Mattye Mauldin-Taylor ("Mauldin-Taylor")) and a sixth individual defendant, Womble.[3]  Fisher and Smith allege that, during their employment with Dallas County, they were subjected to race discrimination in the form of a hostile work environment, disparate application of county disciplinary policies and procedures, disparate terms and conditions of employment, and retaliation.  They also allege that Womble and the Individual Defendants subjected them to intentional infliction of emotional distress.

In *Fisher v. Dallas County*, 299 F.R.D. 527 (N.D. Tex. 2014) (Fitzwater, C.J.) ("*Fisher I*"), the court granted the Individual Defendants' motion to require plaintiffs to file a Rule 7(a) reply.  *Id.* at 533.  Plaintiffs have done so, and the Individual Defendants now move under Rule 12(c) for judgment on the pleadings as to all claims.

---

[1]*See Fisher v. Dallas Cnty.*, 299 F.R.D. 527 (N.D. Tex. 2014) (Fitzwater, C.J.).  The legal publisher selected the opinion for inclusion in Federal Rules Decisions.

[2]The court does not suggest by referring to the Commissioners Court as a defendant that it is a jural entity that is separate from Dallas County itself.

[3]The court refers to Womble separately because he is represented by separate counsel.

- 2 -

Defendant Womble previously moved for judgment on the pleadings as to plaintiffs'
individual-capacity claims asserted against him.  The court granted Womble's motion in part,
dismissing plaintiffs' individual-capacity claims for discrimination under Title VII and the
TCHRA, their race discrimination and hostile work environment claims under §§ 1981 and
1983, and their IIED claims under Texas common law.  *Id.* at 533-38.  The court denied
Womble's motion for judgment on the pleadings as to plaintiffs' retaliation claims brought
under §§ 1981 and 1983.  *Id.* at 537.  Five days after the court decided Womble's first Rule
12(c) motion—and before plaintiffs filed an intervening pleading—he filed a second Rule
12(c) motion seeking dismissal of plaintiffs' individual-capacity § 1983 retaliation claims
based on the Fourteenth Amendment.  Plaintiffs oppose defendants' motions.

II

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to
delay trial—a party may move for judgment on the pleadings."  The standard for deciding
a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule
12(b)(6).  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305,
313 n.8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a
Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation and internal
quotation marks omitted)).

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all
well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'"  *In
re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby*

*Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive defendants' motions, plaintiffs' pleadings must allege enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court first considers whether Jones is entitled to judgment on the pleadings based on qualified immunity as to plaintiffs' § 1983 harassment and hostile work environment

- 4 -

claims asserted against him in his individual capacity.[4]

## A

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity likewise applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar.

---

[4]Although in their Rule 7(a) reply plaintiffs assert individual-capacity § 1983 harassment and hostile work environment claims against Womble (which the court dismissed in *Fisher I*, 299 F.R.D. at 536), they do not allege individual-capacity § 1983 harassment and hostile work environment claims against any of the remaining Individual Defendants. And to the extent they intended to allege such claims in their amended complaint, they do not plead them with sufficient specificity to enable the court to conclude that plaintiffs have overcome the remaining Individual Defendants' qualified immunity defenses to these claims.

3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry."))[5]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201.  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id*.  "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."  *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken."  *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  "'The defendant's acts are held to be objectively reasonable

---

[5]As the court explained in *Fisher I*:

> *Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory.  Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation.  The decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases.

*Fisher I*, 299 F.R.D. at 531 n.5 (citations omitted) (internal quotation marks omitted).

unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

B

Section 1983 and Title VII are "parallel causes of action." *Cervantez v. Bexar Cnty. Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996). The "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Briggs v. Anderson*, 796 F.2d 1009, 1019-21 (8th Cir. 1986)). Courts use the same legal framework to analyze claims brought under Title VII and § 1981. *See DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007). Accordingly, in analyzing plaintiffs' § 1983 harassment and hostile work environment claims, the court can rely on decisions that address claims brought under Title VII, § 1981, and § 1983.

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). Generally, to establish a prima facie case of a hostile work environment, a plaintiff must show the following:

- 7 -

> (1) [he] belongs to a protected group; (2) [he] was subjected to
> unwelcome harassment; (3) the harassment complained of was
> based on race; (4) the harassment complained of affected a term,
> condition, or privilege of employment; [and] (5) the employer
> knew or should have known of the harassment in question and
> failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted).

"Harassment is based on race if 'the complained-of conduct had a racial character or purpose.'" *King v. Enter. Leasing Co. of DFW*, 2007 WL 2005541, at *10 (N.D. Tex. July 11, 2007) (Fitzwater, J.) (quoting *Harris-Childs v. Medco Health Solutions, Inc.*, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) (Means, J.)).  Plaintiffs must demonstrate a "connection between the allegedly harassing incidents and [their] protected status." *Id.* (alteration, citation, and internal quotation marks omitted).  "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted)).

Additionally, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21-22).  "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance.'" *Ramsey*, 286 F.3d at 268 (quoting *Walker v. Thompson*, 214 F.3d 615, 625

(5th Cir. 2000)).

> The real social impact of workplace behavior often depends on
> a constellation of surrounding circumstances, expectations, and
> relationships which are not fully captured by a simple recitation
> of the words used or the physical acts performed.  Common
> sense, and an appropriate sensitivity to social context, will
> enable courts and juries to distinguish between simple teasing .
> . . and conduct which a reasonable person in the plaintiff's
> position would find severely hostile or abusive.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).  Merely offensive

conduct is not actionable.  *See Harris*, 510 U.S. at 21.  "[T]he Supreme Court has warned

that these high standards are intentionally demanding to ensure that Title VII does not

become a general civility code, and when properly applied, they will filter out complaints

attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive

language." *Howard v. United Parcel Serv.*, Inc., 447 Fed. Appx. 626, 632 (5th Cir. 2011)

(per curiam) (citations and internal quotation marks omitted) (quoting *Faragher*, 524 U.S.

at 788).

## C

Plaintiffs assert § 1983 harassment and hostile work environment claims against Jones

in his individual capacity, alleging that he "violated Smith's rights secured by the

[F]ourteenth [A]mendment" when, "[i]n Smith's presence, Jones said, 'I don't know; I can't

see for all the mud standing in front of the board,' when the only person in front of the board

was an employee who is Hispanic."  Ps. Rule 7(a) reply 7.  They contend that Jones is

personally liable for damages under § 1983 because "a reasonable person in Jones' position

would know that a supervisor referring to a worker as mud standing in front of a board

violates the constitutional rights further protected by the Civil Rights Act."  *Id.* at 8.

Defendants argue that Jones is entitled to qualified immunity because Smith, an

African-American, does not allege that the conditions of *his* employment have been altered

by the "lone allegation" that Jones used a "racial slur" against a Hispanic employee.  Ds. Br.

5.  Although the court does not deem it determinative that Smith is African-American and

that Jones allegedly used a racial slur against a Hispanic employee,[6] the court holds that

plaintiffs have failed to allege that Jones subjected them to harassment that affected a

condition of their employment.  Plaintiffs' allegation that, on one occasion, Jones used in

Smith's presence a racial slur of the type alleged is insufficient to allege harassment that

affected a condition of plaintiffs' employment.  "[I]solated incidents (unless extremely

---

[6]For example, in *Hernandez v. Yellow Transportation, Inc.*, 670 F.3d 644 (5th Cir. 2012), the panel reasoned:

> The district court held that the examples of harassment towards
> African-American employees could not support the claim that
> there was a hostile work environment for Hispanic employees.
> Whether that conclusion is always correct we need not decide.
> It does appear, though, that if the evidence of the workplace
> environment for the employees of a plaintiff's race does not
> show frequent, severe, and pervasive hostility, then evidence of
> hostility towards a different racial group is not much support for
> the plaintiff's claim.

*Id.* at 653-54.

serious) will not amount to discriminatory changes in the terms and conditions of employment." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (quoting *Faragher*, 524 U.S. at 788) (internal quotation marks omitted). In support of their individual-capacity § 1983 claims against Jones, plaintiffs allege a single instance of a racial slur. This is insufficient to allege a plausible claim that Jones violated plaintiffs' rights under § 1981 or the Fourteenth Amendment (remediable via § 1983) to be free from racial harassment or a racially hostile work environment. This court must apply a high standard to ensure that the laws that forbid racial harassment and racially hostile work environments do not become general civility codes, and that complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, are eliminated. *Howard*, 447 Fed. Appx. at 632.

Because plaintiffs have failed to make a facially plausible claim—that is, because their amended complaint is devoid of factual content that would allow the court to draw the reasonable inference that Jones's conduct violated plaintiffs' constitutional rights—the court grants defendants' motion for judgment on the pleadings to the extent of dismissing their § 1983 claims against Jones in his individual capacity on the basis of qualified immunity.

D

Because plaintiffs have failed to make a facially plausible claim that any of the Individual Defendants violated one of plaintiffs' constitutional rights, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Accordingly, the § 1983 claims asserted against Mauldin-Taylor, Brown, Lilley, Howerton, Jones, and

Wright in their individual capacities are dismissed.

IV

The court also dismisses plaintiffs' official-capacity claims against the Individual Defendants.[7]  It is clearly established that a suit against a government official in his or her official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Plaintiffs' official-capacity claims are therefore duplicative of the claims against Dallas County and should be dismissed.  *See, e.g., Palo ex rel. Estate of Palo v. Dallas Cnty.*, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) (dismissing § 1983 claims against sheriff sued in his official capacity as duplicative of claims against county).

---

[7]Defendants note in their brief that official capacity claims are treated as claims against Dallas County, but they do not specifically move for dismissal of these claims on this basis.  Nevertheless, a district court has the authority to consider the sufficiency of a complaint and dismiss an action *sua sponte*, as long as the procedure it employs is fair.  *See, e.g., Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733 n.7 (N.D. Tex. 2011) (Fitzwater, C.J.) (noting that district court has authority to consider sufficiency of complaint and dismiss action on its own motion as long as procedure employed is fair, raising ground for dismissal *sua sponte*, and concluding that procedure was fair because court was granting leave to replead).  Here, because the court is granting plaintiffs leave to replead their claims against the Individual Defendants, it can raise this ground for judgment on the pleadings *sua sponte*.

V

Plaintiffs bring claims for IIED against several of the Individual Defendants in their individual capacities.  The Individual Defendants move to dismiss, contending that plaintiffs have failed to plead the necessary elements of an IIED claim under Texas law, particularly the requirement of egregious conduct.

The court raises *sua sponte*[8] as a basis for dismissal that, to the extent plaintiffs base their IIED claims on the same conduct that forms the basis for their race discrimination claims, their IIED claims must be dismissed for the reasons set out in *Fisher I*.  As the court explained in *Fisher I*, "[u]nder Texas law, a plaintiff may not bring an IIED claim when other statutory remedies are available for the underlying conduct."  *Fisher I*, 299 F.R.D. at 537 (citation and internal quotation marks omitted).  This is because

> IIED is a gap-filler tort never intended to supplant or duplicate existing statutory or common-law remedies.  Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill.  Therefore, courts have found that employees' IIED claims against supervisors are precluded when there are other statutory remedies available against the employer.

*Id.* (citations and internal quotation marks omitted).

As in *Fisher I*, regarding many of the IIED allegations against the Individual Defendants, plaintiffs have "'not attempted to distinguish the conduct which supports the IIED claim from the conduct which supports the statutory workplace claims.'"  *Id.* (quoting

---

[8]*See supra* note 7.

- 13 -

*Muniz v. El Paso Marriott*, 2009 WL 4878619, at *3 (W.D. Tex. Dec. 8, 2009)).   For example, plaintiffs base their IIED claims on allegations that Lilley, Jones, and Howerton[9] "subjected [them] to intentional infliction of emotional distress by directing and allowing to be directed toward Plaintiffs racist, discriminatory, homophobic, and physically threatening remarks and race-based hostile remarks and actions," Am. Compl. ¶ 17; that Jones and Lilley "did intentionally and recklessly inflict emotional distress on plaintiffs through [their] outrageous words and actions . . . exceeding all bounds of decency," *id.* ¶ 56; and that Jones subjected them to racial slurs, including stating, "I can't see for all the mud standing in front of the board," *id.* ¶ 50.   By these allegations, plaintiffs are "'attempting impermissibly to predicate [their] IIED claim on the same conduct which underpins' their discrimination and retaliation claims," and "invoke the same facts to allege discrimination and retaliation that they rely on to allege IIED."   *Fisher I*, 299 F.R.D. at 537-38 (citations omitted).

For the remaining IIED allegations, plaintiffs do not allege the type of "extreme and outrageous" conduct that Texas courts require to state such a claim.   *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) ("To recover for intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress

---

[9]Plaintiffs also assert IIED claims against Womble, but because the court has already dismissed plaintiffs' IIED claims against Womble, it will not consider these allegations in dismissing plaintiffs' IIED claims against the Individual Defendants.

suffered by the plaintiff was severe." (citation omitted)).  Plaintiffs allege that Jones "more than once entered the closed-door meeting between [Mauldin-Taylor and Smith] on the pretext of retrieving something from the room." *id.* ¶ 57; that Brown conducted "interviews regarding discrimination complaints in the office [of] Defendants [Lilley and Womble], knowing that the walls were not sound-proof and knowing that employees were aware that their responses were being heard by Defendants [Lilley and Womble], thereby inhibiting their responses or making them targets for retaliation," *id.* ¶ 58; and that Mauldin-Taylor "warned [Smith] to not pursue racial discrimination claims," and, when Smith did complain that only African-Americans had been fired for prior convictions, she "did not take the complaint seriously, indicated she did not want to receive the complaint, and took no action," *id.* ¶¶ 59-60.[10]  These allegations do not allege conduct that is so extreme in degree, or so outrageous in character, as to "go[] beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," as required under Texas law. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993) (bracket omitted) (cited in *Wright v. Blythe-Nelson*, 2001 WL 1012701, at *5 (N.D. Tex. Aug. 15, 2001) (Fitzwater, J.)).  That is, the allegations are devoid of factual content that would allow the court to draw the reasonable inference that plaintiffs have stated facially plausible IIED claims on these grounds.

---

[10]Because the other allegations in support of plaintiffs' IIED claim are directed against Womble, the court does not consider these allegations in dismissing plaintiffs' IIED claims against the Individual Defendants.

Accordingly, the court dismisses plaintiffs' IIED claims brought against the Individual Defendants in their individual capacities.

## VI

The court now turns to defendant Womble's second motion for judgment on the pleadings, which is addressed to plaintiffs' individual-capacity § 1983 retaliation claims based on alleged violations of the Fourteenth Amendment.[11]

## A

In *Fisher I* the court granted Womble's motion for judgment on the pleadings under Rule 12(c) as to all of plaintiffs' claims asserted against him in his individual capacity except for their § 1983 retaliation claims. *Fisher I*, 299 F.R.D. at 533-38. The court rejected the basis on which Womble had moved for judgment as to those claims. *Id.* at 536-37. And because he had not moved to dismiss the retaliation claims on any other basis, the court denied his motion as to plaintiffs' retaliation claims. *Id.* at 537.

Five days after the court issued its decision in *Fisher I*, Womble filed the instant second motion for judgment on the pleadings under Rule 12(c). In this motion—which, like his first motion, is addressed to plaintiffs' amended complaint—Womble seeks to shore up

---

[11]It is not clear that plaintiffs are asserting individual-capacity § 1983 retaliation claims based on alleged violations of the Fourteenth Amendment. *See* Am. Compl. ¶¶ 1, 2 ("This action is brought pursuant to . . . Section 1981 and 1983 of Title 42 of the United States Code to remedy discrimination on the basis of race and retaliation); Ps. Rule 7(a) reply 14-15 (alleging that Womble is liable in his *official capacity* for the retaliatory reassignments and alleging Womble violated Plaintiffs' rights secured by the Fourteenth Amendment). The court will assume *arguendo* that they are alleging these claims.

- 16 -

the deficiency that the court identified in his first motion by raising a different basis for dismissing the retaliation claims.  He now maintains that these claims must be dismissed because § 1983 retaliation claims growing out of complaints of employment discrimination are not actionable under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs respond that Womble's motion should be summarily denied because this ground for judgment was available at the time he filed his first Rule 12(c) motion, but he failed to raise it.

In reply, Womble points to Rules 12(g)(2) and (h)(2) and this court's decision in the companion case of *Jones v. Dallas County*, 2014 WL 1632154 (N.D. Tex. Apr. 23, 2014) (Fitzwater, C.J.) ("*Jones II*").  He maintains that Rule 12's prohibition against successive motions does not apply to motions for judgment on the pleadings for failure to state a claim on which relief can be granted, that his second motion for judgment is proper, and that the court should dismiss plaintiffs' sole remaining retaliation claims under § 1983.

B

The court concludes that Womble's motion is an improper successive Rule 12(c) motion.  Womble filed a Rule 12(c) motion that the court addressed in *Fisher I*.  Without any intervening change in plaintiffs' pleadings, Womble filed a successive Rule 12(c) motion five days after the court decided his first motion.  In other words, he filed a second Rule 12(c) motion addressed to the same amended complaint.

Womble's reliance on Rules 12(g)(2) and (h)(2) is misplaced.  As pertinent here, the intent of these Rules is to make clear that a party can raise by Rule 12(c) motion the defense

of failure to state a claim on which relief can be granted, regardless whether the party raised that defense in a pre-answer Rule 12(b)(6) motion. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1385, at 483 (3d ed. 2004) ("However, even though a Rule 12(b) motion has been made and a second Rule 12(b) motion is not permitted, the three defenses listed in Rule 12(h)(2) may be raised on a motion under Rule 12(c) for judgment on the pleadings, on a summary judgment motion, or at trial." (footnotes omitted)). These Rules are not intended to provide that a party can file *ad nauseam* successive Rule 12(c) motions addressed to the same pleading.

Womble's reliance on *Jones II* is also misplaced because it is distinguishable procedurally.  In *Jones II* Womble filed a second motion for judgment on the pleadings, to which plaintiffs objected on the ground that the motion was untimely because it was filed after the relevant deadline in the amended scheduling order. *Jones II*, 2014 WL 1632154, at *2 n.4.  The court explained that the conditions of Rule12(h)(2) and Rule 12(c) for filing a motion for judgment on the pleadings were satisfied. *Id.*  Significantly, the court reasoned that there was good cause to consider Womble's Rule 12(c) motion because "Womble did not have the benefit of plaintiffs' Rule 7(a) reply when he filed his first motion for judgment on the pleadings, and plaintiffs did not file their Rule 7(a) reply until [after the relevant deadline in the amended scheduling order]." *Id.*  In other words, the court relied in part on the fact that the plaintiffs' pleadings had changed: they had filed a Rule 7(a) reply.  This was a material change, as corroborated by the fact that the court specifically addressed the adequacy of the Rule 7(a) reply when addressing Womble's second Rule 12(c) motion. *See,*

- 18 -

*e.g., id.* at *7.  In the present case, Womble filed his second motion five days after the court decided the first motion, and his second motion is addressed to the same amended complaint as was his first.

The court holds that when a party files a Rule 12(c) motion, the opposing party does not file an intervening pleading (e.g., an amended complaint) that is subject to challenge for failure to state a claim on which relief can be granted, and the party files a second Rule 12(c) motion that is addressed to the same pleading that is the subject of the first Rule 12(c) motion, the second motion is successive and can be denied on that basis.  In this case, Womble is simply attempting by his second Rule 12(c) motion to obtain relief regarding the same amended complaint that he was unable to secure in his first motion.  The court therefore denies his motion as successive.

C

Although the court has denied Womble's motion, it can raise *sua sponte* that plaintiffs' § 1983 individual-capacity retaliation claims should be dismissed to the extent they are based on alleged violations of the Equal Protection Clause of the Fourteenth Amendment.[12]

To state a claim in an individual-capacity suit brought under § 1983, a plaintiff must allege a violation of the Constitution or federal law by a person acting under color of state law.  *Jones II*, 2014 WL 1632154, at *7 (citing 42 U.S.C. § 1983).  To the extent plaintiffs'

---

[12]*See supra* note 7.

amended complaint and Rule 7(a) reply can be construed to allege that Womble violated the Fourteenth Amendment by retaliating against them, plaintiffs have failed to state plausible claims because "no cause of action exists for retaliation under the Equal Protection Clause of the Fourteenth Amendment." *Tinoco v. Raleeh*, 2006 WL 27287, at *2 (E.D. Tex. Jan. 5, 2006) ("While plaintiffs may bring suit for racial discrimination under both Title VII and the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs may not bring claims for retaliation under the Equal Protection Clause."); *see also Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("Although claims of retaliation are commonly brought under the First Amendment . . . and may also be brought under Title VII . . . we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."); *Ratliff v. DeKalb Cnty., Ga.*, 62 F.3d 338, 340 (11th Cir. 1995) (reversing denial of qualified immunity on equal protection retaliation claim because "[t]he right to be free from retaliation [for making complaints of discrimination] is clearly established as a *first amendment* right and as a *statutory* right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation"); *Gates v. City of Dallas*, 1998 WL 401602, at *4 (N.D. Tex. July 15, 1998) (Fitzwater, J.) ("[R]etaliation does not support an equal protection claim.").

Accordingly, the court raises *sua sponte* that Womble is entitled to judgment on the pleadings dismissing plaintiffs' individual-capacity § 1983 retaliation claims based on alleged violations of the Equal Protection Clause of the Fourteenth Amendment, and it dismisses these claims.

- 20 -

D

Plaintiffs also assert individual-capacity § 1983 claims against Womble based on allegations that he retaliated against them in violation of § 1981. Because Womble does not move to dismiss this ground of these retaliation claims, and because without adequate briefing the court is not inclined to address the question whether an individual can be held liable under § 1983 based on a § 1981-based retaliation claim, the court declines to raise this basis for dismissal *sua sponte*. These retaliation claims remain against Womble individually.

VII

The court grants plaintiffs leave to replead. First, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (citation omitted). Although plaintiffs have already amended their complaint once and have filed a Rule 7(a) reply, this is the first occasion for the court to evaluate the substantive merits of their claims against the Individual Defendants. Because plaintiffs have not stated that they cannot, or are unwilling to, cure the defects that the court has identified, the court grants them 28 days from the date this memorandum opinion and order is filed to file a second amended complaint. Second, the court has raised dismissal *sua sponte* on several grounds. And for the reasons explained, *see supra* note 7, it concludes that fairness requires that they be permitted another opportunity to state claims on which relief can be granted.

\*   \*   \*

For the reasons set out, on bases that the court in part raises *sua sponte*, the court grants the Individual Defendants' motion for judgment on the pleadings and grants in part Womble's motion for judgment on the pleadings.  The court grants plaintiffs leave to file a second amended complaint within 28 days from the date this memorandum opinion and order is filed.

**SO ORDERED**.

September 26, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE